THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

|  |  |
|---|---|
| ) | C/A No.: 2:20-cv-00739-RMG |
| ) | |
| Illia Dimitrov Popov, by and through his ) | |
| assignees, Sara M. Delgado, Personal ) | |
| Representative of the Estates of Elizabeth ) | |
| Gause and Rodney Lumsford Gause, ) | |
| Patrick Rein as Guardian *ad litem* for ) | |
| I.R.G.R. and Peggy Lowman Gause, ) | |
| ) | |
| ) | |
| Plaintiffs, ) | |
| ) | **ORDER AND OPINION** |
| v. ) | |
| ) | |
| QBE Insurance Corporation, ) | |
| ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

Before the Court is the parties' joint motion for Protective Order. (Dkt. No. 39). For the reasons stated below, the motion is denied in part, granted in part.

**I.     Background**

Plaintiffs are the Assignees of Illia Dimitrov Popov ("the Insured") and bring a bad faith claim against Defendant QBE ("QBE"). (Dkt. No. 1). Plaintiffs are Sara M. Delgado as the Personal Representative of the Estates of Elizabeth Gause and Rodney Lumsford Gause; and Patrick Rein as the Guardian *ad litem* for I.R.G.R. and Peggy Lowman Gause. ("Judgment Holders"). QBE provided the Insured with an automobile insurance liability policy with bodily injury policy limits of $100,000 per accident. (Dkt. No. 22 at ¶¶ 8-11); (Dkt. No. 49 at 28). On May 6, 2011, the Insured was involved in an automobile accident that injured I.R.G.R., Peggy Lowman Gause, Elizabeth Gause and Rodney Lumsford Gause. (Dkt. No. 22 at ¶¶ 12-15); (Dkt. No. 27 at ¶ 59).

Elizabeth Gause and Rodney Lumsford Gause sustained fatal injuries from the accident. (Dkt. No. 22 at ¶ 14); (Dkt. No. 27 at ¶ 59). Defendants allege the accident also involved two additional Florida claimants. (Dkt. No. 27 at ¶ 59). The Judgment Holders made a demand for QBE to settle their claims within the policy limits that did not include the Florida claimants. (*Id.* at ¶¶ 16-20); (Dkt. No. 27 at ¶60). On November 14, 2011, the Judgment Holders commenced a lawsuit against the Insured in the Court of Common Pleas for Charleston County ("underlying tort action").[1] (Dkt. No. 22 at ¶ 28); (Dkt. No. 27 at ¶ 49). On March 23, 2012, QBE filed an interpleader action ("interpleader action") in this Court naming all six individuals injured in the accident.[2] (Dkt. No. 27 at ¶ 49). On September 4, 2012, the Court entered an interpleader order permitting QBE to deposit the policy limits to the Court Registry. (Dkt. No. 49-4). The Court subsequently dispersed the policy limits to the Judgment Holders. QBE continued to provide a defense to the Insured in the underlying state court action where an $11 million dollar judgment was entered against the Insured. (Dkt. No. 49-5). On October 25, 2019, the state court entered an order that assigned to the Judgment Holders "all contract and tort claims [the Insured] has or may have against QBE." ("supplemental proceedings"). (Dkt. No. 49-6). The assignment does not include any provision as to an assignment of the Insured's right to waive privilege or protection. (*Id.*).

In the instant action, the parties present a discovery issue to the Court related to the production of documents that are purportedly protected by various privileges. Plaintiffs served a subpoena on The Pritchard Law Firm LLC and served discovery requests on QBE seeking the production of documents, information, and testimony from QBE related to the following categories: (1) from

---

[1] *Delgado v. Popov*, 11-CP-10-8448 and subsequently renumbered as 14-CP-10-07742.
[2] *QBE Insurance Corporation v. Sara M. Delgado, as Personal Representative of the Estates of Elizabeth Lois Gause and Rodney Lumsford Gause; Patrick Rein, as Guardian ad Litem for IRG-R; Peggy Lowman Gause, Iraida Velasquez, Virgenes Diaz*, 2:12-cv-847-RMG (D.S.C.).

Adair Horne & Associates ("AHA"), the third-party administrator hired by QBE to handle the claims against Insured; (2) from The Pritchard Law Firm LLC, the defense counsel hired by QBE to defend the Insured in the underlying tort action; (3) from Wall Templeton, the law firm hired by QBE to handle the interpleader action relating to the Insured's insurance policy limits; (4) related to the defense of the claims against the Insured in the possession of QBE. (Dkt. No. 39-1).

QBE produced over 6,000 documents in response to Plaintiffs' requests. Some documents included redactions of privileged or protected material. QBE also served a privilege log, detailing the basis for withholding and redacting documents. (Dkt. No.48-3). QBE objected to the production of certain documents claiming the information is protected by attorney-client privilege, attorney-work product, and joint defense doctrine. QBE maintains that because it has not received consent from the Insured to disclose information or produce documents subject to certain privileges and protections, it cannot risk a potential ethical violation by disclosing the information without the Insured's written approval. The parties maintain that consent of the Insured cannot be obtained because he is no longer a resident of the United States of America and the parties have no means of contact with the Insured. (Dkt. No. 39-1 at 3).

On March 4, 2021, the parties filed a joint motion for protective order. (Dkt. No. 39). The parties seek an Order from the Court authorizing QBE to produce and disclose all responsive documents that are currently withheld based on privilege or protection. In addition, the parties seek an Order that protects the parties from any future claims of improper action or violation of the attorney-client privilege; work-product privilege; discovery protections; or confidentiality rights of the Insured, by producing and disclosing the requested information. (Dkt. No. 39-1 at 2, 4-5). On May 15, 2021, the Court held a status conference with counsel to discuss the parties' joint motion for protective order. The Court instructed the parties to submit memoranda addressing

the Court's ability to approve production of the subject materials considering any attorney-client privilege the Insured could claim as to those documents. (Dkt. No. 43). The parties filed briefs on April 21 and April 28, 2021. (Dkt. Nos. 48, 49, 51). In addition, QBE submitted for the Court's *in camera* review sample documents containing purportedly privileged information. The matter is ripe for the Court's review.

## II.     Legal Standard

Parties to a civil litigation may obtain discovery on "any nonprivileged matter that is relevant to any party's claim or defense" so long as the information is "proportional to the needs of the case…." Fed. R. Civ. P. 26(b)(1). However, the court "must limit the frequency or extent of discovery…if it determines that the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i). Therefore, the court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" by forbidding the discovery of the material at issue. Fed.R.Civ.P. 26(c)(1). "The scope and conduct of discovery are within the sound discretion of the district court." *Columbus–Am. Discovery Grp. v. Atl. Mut. Ins. Co.*, 56 F.3d 556, 568 n.16 (4th Cir. 1995); *see also Carefirst of Md, Inc. v. Carefirst Pregnancy Ctrs.*, 334 F.3d 390, 402 (4th Cir. 2003) ("Courts have broad discretion in resolution of discovery problems arising in cases before [them].")

## III.     Discussion

### A. Categories of Documents Identified in QBE's Privilege Log as Withheld Based on Privilege or Protection

In their brief, Plaintiffs list ten categories of documents noted in QBE's privilege log that were withheld as privileged or protected. Plaintiffs request for the Court to determine which categories would contain communications that are protected by the Insured's attorney-client privilege. (Dkt.

4

No. 48). QBE filed a reply to Plaintiffs' brief that does not address Plaintiffs' categorization of documents but states that QBE "does not agree with all of the [Plaintiffs'] arguments advanced in their Response Brief . . . and reserves the right to challenge those arguments as they impact the merits of this case." (Dkt. No. 51 at 1). The Court will review the list of categories of documents and decide which categories would contain privileged material.

*1. Between AHA and QBE.*

As to category one, these communications are between AHA, the third-party administrator hired by QBE to handle the claims against Insured and QBE, the Insurer. These communications would not be subject to the Insured's attorney-client privilege as they do not involve communications between the Insured or the Insured's attorney.

*2. Between AHA and the Insured.*

As to category two, these communications are between AHA, the third-party administrator hired by QBE to handle the claims against Insured and the Insured. These communications would not be subject to the Insured's attorney-client privilege as the communications are not between the Insured or the Insured's attorney.

*3. Between QBE and the Insured.*

As to category three, these communications are between QBE as the Insurer and the Insured. Communications between QBE and the Insured that do not involve legal counsel may not contain privileged attorney-client communications, but rather are incidents of their commercial relationship. *State Farm Fire & Cas. Co. v. Admiral Ins. Co.*, 225 F. Supp. 3d 474, 480-82 (D.S.C. Feb. 4, 2016). These communications would not be subject to the Insured's attorney-client privilege.

*4. Between Templeton and AHA.*

As to category four, these communications are between AHA, the third-party administrator hired by QBE to handle the claims against Insured and Wall Templeton, the law firm hired by QBE to handle the interpleader action relating to the Insured's insurance policy limits. These communications would not be subject to the Insured's attorney-client privilege as these communications do not involve the Insured or his attorney.

5. *Between Templeton and QBE.*

As to category five, these communications are between Wall Templeton, the law firm hired by QBE to handle the interpleader action relating to the Insured's insurance policy limits and QBE, the Insurer. These communications would not be subject to the Insured's attorney-client privilege. Templeton served as interpleader counsel for QBE related to the Insured's policy liability limits. Thus, QBE would own the attorney-client privilege and may waive the privilege.

6. *Between PLG and Templeton.*

As to category six, these communications are between Wall Templeton, the law firm hired by QBE to handle the interpleader action relating to the Insured's insurance policy limits and PLG, the law firm hired by QBE to defend the Insured in the underlying tort action. These communications would not be subject to the Insured's attorney-client privilege as these communications do not involve communications between the Insured and his attorney.

7. *From AHA/QBE to PLG; 8. From AHA/QBE to PLG before the judgments; 9. From PLG to AHA/QBE after the judgments.*

As to categories seven through nine, these communications are between AHA as the third-party claims administrator hired by QBE to handle the claims against the Insured to PLG, the law firm hired to defend the Insured in the underlying tort action. The Court finds these documents may contain information that is subject to the Insured's attorney-client privilege through the common interest doctrine. *State Farm Fire & Cas. Co.*, 225 F. Supp. 3d 474, 480-82 (D.S.C. Feb.

6

4, 2016) (finding the common interest doctrine to be available under South Carolina law in a relationship between an insurer, an insured, and counsel retained for the insured by the insurer.). Under this doctrine, the only communications that would be subject to the attorney-client privilege are communications from PLG to QBE that retransmit privileged communications between the Insured and PLG. The information covered by the common interest doctrine cannot be waived without the consent of all parties who share the privilege. *Tobaccoville USA, Inc.* v. McMaster, 692 S.E.2d 526, 531 (S.C. 2010). QBE is instructed to identify any documents that fall into this category and produce the documents for the Court's *in camera* review.

> *10. Between PLG and the Insured.*

As to category ten, these are communications are between the Insured and PLG, Insured's defense counsel in the underlying tort action. These communications may contain material protected by the Insured's attorney-client privilege. Plaintiffs indicate that QBE's privilege log only contains five letters between PLG and the Insured. QBE produced four of these letters for the Court's *in camera* review. QBE (POPOV)_PRIV_ 0000 55, 56, 86, 89. QBE is instructed to identify any additional documents that fall into this category and produce the documents that have not already been produced for the Court's *in camera* review.

### B. Sample Documents Produced by QBE for the Court's *In Camera* Review

On April 28, 2021, QBE submitted to the Court sample documents for the Court's *in camera* review as to whether the documents contain material protected by certain privileges or protections. (Dkt. No. 48-3, Privilege Log). The Court will review each document and determine whether it contains material protected by the Insured's attorney-client privilege.

"The determination of whether or not a communication is privileged and confidential is a matter for the trial judge to decide after a preliminary inquiry into all the facts and circumstances." *Tobaccoville USA, Inc.* v. McMaster, 692 S.E.2d 526, 529 (S.C. 2010) (citing *State v. Love*, 271

S.E.2d 110, 112 (S.C. 1980)). In order for communication between an attorney and a client to be privileged, the communication must be confidential in nature, *Love*, 271 S.E.2d 112, and it "must relate to a fact of which the attorney was informed by his client without the presence of strangers for the purpose of securing primarily either an opinion on law or legal services or assistance in some legal proceeding," *Marshall v. Marshall*, 320 S.E.2d 44, 47 (S.C. Ct. App. 1984) (citations omitted). The privilege applies when the communication originates either from the client or the attorney. *Id.* However, "[n]ot every communication within the attorney and client relationship is privileged." State v. *Doster*, 284 S.E.2d 218, 220 (S.C. 1981). This is since "[t]he public policy protecting confidential communications must be balanced against the public interest in the proper administration of justice." *Id.* (citing *N.L.R.B. v. Harvey*, 349 F.2d 900 (4th Cir. 1965), *Sepler v. State*, 191 So.2d 588 (Fla. App. 1966)). For example, "[c]orrespondence that merely transmit[s] documents to or from an attorney, even at the attorney's request for purposes of rendering legal advice to a client, are neither privileged nor attorney work product." *Hege v. Aegon USA, LLC*, 2011 WL 1791883, at *5 (D.S.C. May 10, 2011) (quoting *Guidry v. Jen Marine LLC*, 2003 WL 22038377, at *2 (E.D. La. Aug. 25, 2003).

After an *in camera* review of the sample documents provided by QBE, the Court determines the following:

    *1. Declaration of Morgan S. Templeton*

This is an April 16, 2021 Declaration signed by Morgan S. Templeton, QBE's interpleader counsel. The document contains confidential information related to Mr. Templeton's legal opinion or services and is privileged. QBE holds the privilege and may waive the privilege. QBE (POPOV)_PRIV_000131-133. (Exh. A).

    *2. January 24, 2012 Status Report of James. H. Elliot, Jr. of PLG to Dan Dillon of AHA.*

8

This is a status report between James H. Elliot, Jr., the Insured's defense counsel in the underlying tort action and AHA, the third-party administrator hired by QBE to handle the claims against Insured. This communication contains confidential communications between the Insured and Mr. Elliot related to Mr. Elliot's legal opinion and services and is privileged. Mr. Elliot then retransmits the communication to AHA. Thus, the privileged material is protected by the common interest doctrine. QBE (POPOV)_PRIV_000069-72. (Exh. B). The information covered by the common interest doctrine cannot be waived without the consent of all parties who share the privilege. *Tobaccoville USA, Inc. v*, 692 S.E.2d at 531.

3. *July 27, 2012 Status Report of James H. Elliot, Jr. of PLG to Dan Dillon of AHA.*

This is a status report between the Insured's defense counsel in the underlying tort action, James H. Elliot, Jr. and AHA, the third-party administrator hired by QBE to handle the claims against the Insured. The communication contains confidential communications between the Insured and Mr. Elliot related to Mr. Elliot's legal opinion and services and is privileged. Mr. Elliot then retransmits the communication to AHA. Thus, the privileged material is protected by the common interest doctrine. QBE (POPOV)_PRIV_000059-60. (Exh. C). The information covered by the common interest doctrine cannot be waived without the consent of all parties who share the privilege. *Tobaccoville USA, Inc.,* 692 S.E.2d at 531.

4. *Letter of James H. Elliot Jr. of PLG to the Insured.*

This is a letter between the Insured's defense counsel in the underlying tort action, James H. Elliot Jr., and the Insured. The communication contains confidential material related to Mr. Elliot's legal opinion or services and is privileged. QBE (POPOV)_PRIV_ 000055-56. (Exh. D.). The Insured holds the privilege.

5. *Email chain between QBE and Templeton.*

This is an email chain between QBE and counsel from Wall Templeton, the firm that represented QBE in the interpleader action. The communications contain confidential material related to Templeton's legal opinion or services and is privileged. QBE holds the privilege and may waive the privilege. QBE (POPOV)_PRIV_ 000078- 80. (Exh. E.).

      *6. Email between QBE and PLG.*

This is an email chain between QBE and PLG, the firm hired to represent the Insured in the underlying tort action. The communications appear to contain confidential material related to PLG's legal opinion or services to the Insured that is privileged pursuant to the common interest doctrine. QBE (POPOV)_PRIV_ 000081.1 -81.5. (Exh. F). The information covered by the common interest doctrine cannot be waived without the consent of all parties who share the privilege. *Tobaccoville USA, Inc.,* 692 S.E.2d at 531.

      *7. Letter of Edward K. Pritchard of PLG to Insured.*

This is a letter between the Insured's defense counsel, Edward K. Pritchard, in the underlying tort action and the Insured. This communication contains confidential material related to Mr. Pritchard's legal opinion or services and is privileged. QBE (POPOV)_PRIV_ 000086.1-86.2. (Exh. G.). The Insured holds the privilege.

      *8. Letter of Edward K. Pritchard Letter to Insured.*

This is a letter between the Insured's defense counsel, Edward K. Pritchard, in the underlying tort action and the Insured. This communication between PLG and the Insured involves confidential information related to Mr. Pritchard's legal opinion or services is privileged. QBE (POPOV)_PRIV_ 000089. (Exh. H.). The Insured holds the privilege.

**C. May the Court authorize the production of documents that contain material protected by the Insured's attorney-client privilege in the absence of the Insured's waiver of the attorney-client privilege?**

The parties agree that the Court has the authority to authorize the production of documents that are protected by the Insured's attorney-client privilege. The assignment of Insured's claims is silent as to whether the assignment necessarily includes Insured's privileges and protections. (Dkt. No. 49-6). QBE argues the Insured has impliedly waived the privilege and public policy interests favor the disclosure of the document.

   *i.* *Attorney-Client Privilege in South Carolina*

In diversity cases, the application of the attorney-client privilege is governed by state law- in this case, the law of South Carolina. *State Farm Fire and Casualty Company v. Admiral Insurance Company*, 225 F. Supp. 3d 474, 479 (D.S.C. 2016). The attorney client privilege belongs solely to the client and can only be waived by the client. *State v. Thompson*, 495 S.E.2d 437, 439 (S.C. 1998). Waiver may be explicit or implied. While it is possible to implicitly waive the privilege, such a waiver must be "distinct and unequivocal" as is the case with an explicit waiver. *Id.* at 439; *State v. Hitopoulus*, 309 S.E.2d 747, 749 (S.C. 1983).

"Under South Carolina law, a party may implicitly waive a privilege by placing a privileged communication 'at issue' in a case." *Berchtold Corp. v. Faegre Baker Daniels, LLP*, 2014 WL 12609704, at *2 (D.S.C. Dec. 3, 2014) (quotations and citations omitted). A waiver of the privilege occurs when "the party puts 'at issue' some fact which necessarily involves an examination of the attorney's advice or communication to the client.'" *Id.* (quoting *United States v. White*, 944 F. Supp. 2d 454, 459 (D.S.C. 2013)). The at issue doctrine is based on "notions of fairness and truth-seeking." *White*, 944 F. Supp. 2d at 459. A party waives the attorney-client privilege if (1) assertion of the privilege was a result of some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue making it relevant to the case: and (3) application of the privilege would have denied the opposing

party access to information vital to his defense.'" *Berchtold Corp.*, 2014 WL 12609704, at *2 (quoting *White*, 944 F. Supp. at 459).

> ii.    *Jurisdictional Split Assignment of Claims and Attorney-Client Privilege*

There is a split of authority on whether an assignment of claims includes the assignment of one's right to waive attorney-client privilege or other privileges. In *Muhler*, the District of South Carolina declined to hold that an assignment of claims includes an assignment of attorney-client privilege. *See Muhler Company, Inc. v. State Farm Fire & Cas. Co*. 2018 WL 4599587 (D.S.C. 2018) (relying on the "sanctity of the attorney-client privilege" and South Carolina's disfavor of implying the waiver of the privilege) (reconsidered on other grounds, 2019 WL 2419016 (D.S.C. 2019). South Carolina law has not squarely addressed the issue. The *Muhler* court relied on case law from other jurisdictions such as *In re Cooper*, where the Texas Court of Appeals analyzed this issue under Texas as law where the attorney-client privilege may only be waived under enumerated exceptions. 47 S.W.3d 206, 208-209 (Tex. App. 2001). In *In re Cooper*, the insured's assignment did not contain language waiving his attorney-client privilege and the court found that without explicit language of a voluntary disclosure, the privilege was not waived. *Id.*.[3]

On the other hand, courts in other jurisdictions have held that no privilege can be asserted among the insurer, the insured, and third parties who have been assigned the claims of the insured against the insurer. *Athridge v. Aetna Cas. & Sur. Co.*, 184 F.R.D. 181, 185-87 (D.D.C. 1998) (finding that when an insured assigns whatever claim she had to the person who sued her in the first place . . . the insurance company cannot claim an attorney-client privilege against the insured's

---

[3] *See also Klein v. Fed. Ins. Co.*, 2014 WL 3408355 (N.D. Tex. July 14, 2014) (holding that a party cannot waive its attorney-client privilege simply by assigning its rights without explicitly addressing the waiver of privilege); *In re Hicks*, 252 S.W.3d 790, 794 (Tex. App. 2008) (finding that an assignment of rights and claims does not automatically include a waiver of attorney-client privilege unless specifically stated in the language of the assignment.).

assignee, any more than it could claim it against the insured because the value of the assignment would be rendered next to nothing without access to information about the insurer's actions toward in the insured.).[4]  These cases are distinguished from the instant case as many involve the insurer's assertion of its own privilege against the insured's assignees.  In this case, the QBE as the insurer, is attempting to assert the insured's attorney-client privilege.

In its brief, QBE argues that the Insured's inaction confirms his unwillingness to assert privileges or protections.  (Dkt. No. 49 at 11-12).  QBE asserts the Insured failed to cooperate in the underlying trial or during the supplemental proceedings.  As a result, the state court assigned the Insured's claims in contract and tort against QBE, to the Plaintiffs.  QBE asserts that the Insured's actions amount to a waiver of the attorney-client privilege and related protections.  (Dkt. No. 49 at 11).  The record submitted to the Court suggests that the Insured stopped participating in the underlying tort action after he was deposed in July 20, 2012 when he subsequently failed to attend the underlying trial or the supplemental proceedings.  (Dkt. No.49-6; 49-2 at 16-18). When a party asserts an implied waiver of privilege, "caution must be exercised, for waiver will not be implied from doubtful acts."  *State v. Thompson*, 495 S.E.2d 437, 439 (S.C. 1998).  The Court finds that the Insured's unwillingness to fully participate in the underlying court proceedings does not amount to the Insured's implied waiver of attorney-client privilege.

QBE argues the Insured directly waived any privilege on the subject of his defense in the underlying tort action.  QBE asserts that when the Insured was deposed, he was questioned about

---

[4] *Christiana Care Health Servs, Inc. v. PMSLIC Ins. Co.*, 2015 WL 6958013, at * 1 (D. Del. Nov. 10, 2015) (compelling insurer to produce documents to assignee of insured because the documents were made in furtherance of the joint interests of insurer and insured in underlying action).  *Cox v. Continental Cas. Co.*, 2014 WL 12103545, at * 1-2 (W.D. Wa. Apr. 2, 2014) (finding no privilege with respect to communications with an attorney hired by an insurer to represent an insured as among the insurer, the insured, and assignees of the claims of the insured against the insurer).

the time-limited demand and about information he could have only learned through protected conversations with his counsel or QBE's third-party claims administrator. (Dkt. No. 49 at 11; 49-5 at 39-42). "Any voluntary disclosure by a client to a third party waives the attorney-client privilege not only as to the specific communication disclosed, but also to all communications between the same attorney and the same client on the same subject." *Marshall v. Marshall*, 320 S.E.2d 44, 46–47 (S.C. Ct. App. 1984). The record submitted to the Court by QBE does not QBE's contention that the Insured directly waived privilege during his deposition. The Insured's defense counsel objected to questions that would go to the content of privileged communications and the Insured did not testify as to those matters. (*Id.*).

Last, QBE argues that public policy supports disclosure of the privileged materials because QBE would otherwise be unable to present a defense to Plaintiffs' bad faith claim. (Dkt. No. 49 at 12-13). QBE argues the doctrine of the attorney-client privilege is based on notions of fairness and truth-seeking and the Insured, by "failing to cooperate in his own defense or in the supplemental proceedings, has allowed his otherwise protected communications to become at issue." (*Id.* at 13). QBE cites *In re Mt. Hawley* for the contention that public policy considerations support disclosure of privileged materials.

In *In re Mt. Hawley*, the South Carolina Supreme Court addressed a certified question by the Fourth Circuit regarding the waiver of attorney-client privilege in insurance bad faith litigation. *In re Mt. Hawley*, 829 S.E.2d 707, 717 (S.C. 2019) (Answering whether South Carolina law supports the application of the "at issue" exception to the attorney-client privilege such that a party may waive the privilege by denying liability in its answer?). The holding in *In re Mt. Hawley* is not directly applicable to the case at hand. The *In re Mt. Hawley* court reiterated the sanctity of

14

the attorney-client privilege in South Carolina, but also stated it must be "balanced against the public interest in the proper administration of justice." *In re Mt. Hawley*, 829 S.E.2d at 712.

In this case, the assignment does not reference any assignment of rights, waiver of rights, or consent to disclosure of protected information. (Dkt. No. 49-6). Insured was not present for the underlying tort action and supplemental proceedings, and the Insured's current location is unknown. Plaintiffs brought the instant bad faith claim as assignees of the Insured and it would appear the Insured had no direct role bringing the instant case. The parties jointly assert that communications protected by attorney-client privilege should be disclosed due to the unique facts of this case and the Court's need to facilitate the "truth-seeking function of our justice system". (Dkt. No. 49 at 14). Upon consideration of the briefs and case law, the Court finds there is no basis for the Court to imply the Insured placed the communications protected by the attorney-client privilege "at issue" as the party asserting privilege (QBE) has not put the protected information at issue through an affirmative act, but rather QBE asserts privilege on behalf of the Insured who is not reachable. In addition, there is no evidence for the Court to determine the Insured "distinctly and unequivocally" waived the privilege or voluntarily disclosed privileged information. Thus, the parties have failed to establish the Insured waived attorney-client privilege.

## IV.    Conclusion

For the reasons set forth above, the parties' motion is **DENIED IN PART, GRANTED IN PART**. (Dkt. No. 39). The motion is **DENIED** as to any materials containing confidential information protected by the Insured's attorney-client privilege. The motion is **GRANTED** as to Categories 1-6 identified in Plaintiffs' brief. (Dkt. No. 48). QBE is instructed to produce any additional documents pursuant to categories 7-10 identified in Plaintiffs' brief for the Court's *in camera* review within ten (10) days. (*Id.*). **AND IT IS SO ORDERED**.

15

s/ Richard M. Gergel

Richard M. Gergel
United States District Judge

June 8, 2021
Charleston, South Carolina